[Lessee of the Mayor, &c. of Philadelphia *v.* Clifford.]

The court thought this answer satisfactory.

The inquisition did not recite the names of the jurors in the body of it, but specified that it was taken on the oaths and affirmations of                                              , good and lawful men of the bailiwick of the said sheriff, &c., and the jurors had signed and sealed it.

For the defendant. It was insisted that the inquisition was sensible, and only defective in form. Had not the blank been left, wherein the jurors' names were intended to be inserted, it would have needed nothing. But all amendments are within the discretion of the court. 7 T. R. 699. A *ca. sa.* was amended after being executed. 2 Bl. Rep. 836. A variance in the attorney's name between the warrant and declaration, amended after error brought. Doug. 114. *Scire facias* amended. 1 Dall. 133. So of *alias venditioni.* Ib. 197. So of a rule of reference after report. Ib. 379.

*Per Cur.* Let the inquisition go back to the sheriff to be amended, according to the truth of the case.

*379]   *This was done, and the sheriff filled the blank with the names of the jurors.

Whereupon the court denied the plaintiff's motion, and rendered judgment on the inquisition.

# Lessee of the Mayor, Aldermen, and Citizens of Philadelphia *against* Thomas Clifford and John Clifford.

A patent granted to the mayor, aldermen and citizens of Philadelphia, in trust, for the interment of strangers, is valid, under the act of assembly of 8th April 1786.

THIS cause was tried in Bank on the 11th December 1805, and a point was reserved therein. The counsel afterwards agreed to state the following case:

Ejectment for a certain lot or piece of ground in the city of Philadelphia, 316 feet by 396 feet.

The plaintiff's claim is founded on a patent from the Supreme Executive Council, dated 13th December 1790, reciting the act of assembly of April 8th, 1786, directing the sale of city lots, and impowering the Supreme Executive Council to reserve so many of the lots, &c. for the burial of strangers. That the council did reserve for those purposes three lots, of which the premises are one; and they thereby grant the said three lots to the mayor, aldermen, and citizens, &c., to be used as a burial ground, &c.

The defendants objected that the above patent was void, the Supreme Executive Council having no power to convey under the act of assembly, except as to actual purchasers, and the res-

[Lessee of the Mayor, &c. of Philadelphia v. Clifford.]

ervation directed being to the commonwealth, and not to the city.

This point was reserved.

The defendants then showed a possession from the year 1787, of two of the three lots, and an older possession of one, by an ancient frame building. They also showed title under Francis Smith, a first purchaser, to that lot on which the frame building was erected.

A verdict was given for the defendants, as to the lot to which title under Francis Smith was shewn, and for the plaintiff for the residue of the land claimed.

Messrs. E. Tilghman and Dickerson argued the case for the plaintiff. The reserved point turns on the true construction of the act of assembly of April 8th, 1786, in the proviso at the close of the 2d section. 2 St. Laws 453. The Supreme Executive Council were thereby authorized and required to reserve so many of the public lots, &c., to be appropriated as a burial ground for the interment of deceased strangers, and such other persons who *may not have been in communion with any religious society at the time of their decease. It has not [*380 been denied that the patent well describes the use for which the three lots were intended by the law. By the act of 30th February 1730–31, sect. 2, 1 St. Laws 272, all sales, gifts or grants made of lands to any persons in trusts or sites of churches &c. and burying grounds, are ratified and confirmed, subject to the trust.

It will not be said, that the plaintiff should suffer for want of a court of chancery in this state. If a court of equity would decree in his favor, so will this court. Charitable uses are favoured, where they do not interfere with the statutes of Mortmain. If there is a power to grant for charitable uses, equity will decree the intention, and will not regard the form of executing it. An appointment of lands to a charity, is good without livery of seisin or attornment. 1 Equ. Cas. Abr. 97. pl. 1. A tenant in tail may devise lands to a charity, without fine or recovery. Ib. pl. 4. If lands are devised to the church wardens of a parish to a charitable use, though they are not a corporation capable of taking in succession, yet they shall be capable for this purpose. Ib. pl. 8. Equity will decree a charity, though expressed in general terms. Ambl. 422. Money given to a parish generally without saying to what use, decreed to the poor of the parish. 1 Cha. Ca. 135. One charity devised, and another decreed. 2 Cha. Ca. 19. And it has been settled, that a trustee, with the assent of *cestui que* trust, or of chancery, may assign the trust to others. 2 Comy. Dig. 1st ed. 359. (Chancery, 4 W. 6.) Even a surviving trustee may grant the trust to others. 2 Vern. 748.

The only point then in dispute is, was it the meaning of the law that the Supreme Executive Council should appropriate

A patent was by no means necessary; any expression of their will would suffice. There was a specific reason, why the mayor, aldermen and citizens should be the trustees. The lot was within the jurisdiction of the city. The trust appears on the face of the patent, and no person would purchase from them. It was not the intention of the act to vest any of these lots in the commonwealth. Certain lots were to be reserved for a charitable purpose, and the council as an acting body were to appropriate. The reservation and appropriation are all parts of the same sentence.

Mr. Rawle for the defendants. It is admitted, that the patent describes the uses intended by the law for the lots to be reserved. The Supreme Executive Council were authorized to reserve the eight lots, but had no power to appropriate, or sell them, or grant a patent for them. The trust continued in the commonwealth, and they were to appropriate. By what words are the *council made trustees? How are they to be responsible? What remedy would the state have against them, if they sold in abuse of their trust? The benefit was intended for strangers, not for the citizens of Philadelphia. The Supreme Executive Council could not convey to a corporation, which existed afterwards in 1789; nor is this ground within the objects of the creation of the corporation. The council are impowered to sell other city lots by express words; and if it was intended to confer on them a power to grant a patent in the present case, it would have been so expressed. Such was the case under the 9th section of the act of 8th April 1785, 2 St. Laws 323, which considers the commonwealth as general trustees.

TILGHMAN, C. J. Delivered the opinion of the court as follows.

This case comes before us, on a point reserved at the trial in Bank; and the point in controversy turns on the construction of the act of assembly of 8th April 1786, directing the sale of city lots &c.

The latter words of the 2d section are these.

The Supreme Executive Council are authorized to sell these lots which belong to the state; with a proviso that the council shall reserve so many of the said lots, as shall be at least 200 feet and not more than 400 feet square, in such part of the city as they may judge most convenient, to be appropriated as a burial ground for the interment of deceased strangers, and such other persons as may not have been in communion with any religious society at the time of their decease.

It is confessed, that the Executive Council in the patent granted to the mayor, &c., have created a trust which exactly carries into effect the humane and liberal intention of the legislature. The only question is, whether they had a right to vest the legal estate in the city corporation for this purpose?

This depends on the proviso above mentioned.

[Rugan's Lessee *v.* Philips et al.]

The council are expressly directed to reserve the lots, to be appropriated to the uses, &c. But who is to make the appropriation, the council or the legislature ? Without offending the rules of grammar, it may be construed in one way or the other.

The expression is equivocal. I therefore prefer the construction, which gives the right of appropriation to the council, because I think it most reasonable and most useful. The legislature having defined the trust, there was no reason why they should wish to retain the act of appropriation to themselves, or keep the estate vested in the commonwealth. The legislature is occupied in making laws ; the Executive Council in transacting *business. The appropriation was a mere form, attended with some trouble, and therefore most proper to be transacted by the council. [*382

If the law gave the council the right of making the appropriation, it gave them, by necessary implication, the right of using the proper mean. No mean would be more proper, than vesting the legal estate in some persons, who would see that the intent of the legislature was performed. Who would go to the expence and trouble of inclosing the ground, and providing persons to superintend it ? For this purpose, a corporation is best selected ; because it is subject neither to infancy nor death ; and no corporation was so proper as that of the city of Philadelphia, in which the burial place is situated.

We are therefore of opinion, that the Executive Council did no more, than by law they were authorized to do, when they granted the patent to the lessors of the plaintiff ; and that judgment be entered for the plaintiff, according to the verdict.